# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-1366

_____

Linda Hoekman,

*Plaintiff - Appellant*,

Mary Dee Buros,

*Plaintiff - Appellant,*

Paul Hanson, all appellants on behalf of themselves and others similarly situated,

*Plaintiff - Appellant*,

v.

Education Minnesota, as representative of the class of all chapters and affiliates of Education Minnesota; Anoka Hennepin Education Minnesota, as representative of the class of all chapters and affiliates of Education Minnesota; National Education Association; American Federation of Teachers,

*Defendants - Appellees*,

Shakopee Education Association, as representatives of the class of all chapters and affiliates of Education Minnesota,

*Defendant - Appellee.*

------------------------------

Freedom Foundation; Joseph Johnson; National Right to Work Legal Defense Foundation, Inc.,

*Amici on Behalf of Appellant(s).*

_____

No. 21-1372
_____

Thomas P. Piekarski, on behalf of himself and others similarly situated,

*Plaintiff - Appellant*,

v.

American Federation of State, County and Municipal Employees, Council No. 5, as representative of the class of all chapters and affiliates of the American Federation of State, County, and Municipal Employees, Council No. 5,

*Defendant - Appellee.*
_____

No. 21-2675
_____

Linda Hoekman,

*Plaintiff - Appellant*,

Mary Dee Buros,

*Plaintiff - Appellant*,

Paul Hanson, all appellants on behalf of themselves and others similarly situated,

*Plaintiff - Appellant*,

v.

Education Minnesota, as representative of the class of all chapters and affiliates of Education Minnesota; Anoka Hennepin Education Minnesota, as representative of

the class of all chapters and affiliates of Education Minnesota; National Education Association; American Federation of Teachers,

*Defendants - Appellees*,

Shakopee Education Association, as representatives of the class of all chapters and affiliates of Education Minnesota

*Defendant - Appellee*.

_____

No. 21-2687

_____

Thomas P. Piekarski, on behalf of himself and others similarly situated,

*Plaintiff - Appellant*,

v.

American Federation of State, County and Municipal Employees, Council No. 5, as representative of the class of all chapters and affiliates of the American Federation of State, County, and Municipal Employees, Council No. 5,

*Defendant - Appellee*.

_____

Appeals from United States District Court
for the District of Minnesota

_____

Submitted: February 16, 2022
Filed: July 25, 2022

_____

Before LOKEN, COLLOTON, and SHEPHERD, Circuit Judges.

_____

COLLOTON, Circuit Judge.

The appellants in these cases are four Minnesota state employees who sued unions that represented their local bargaining units. In light of *Janus v. American Federation of State, County, & Municipal Employees*, 138 S. Ct. 2448 (2018), the employees sought monetary relief based on the amount of so-called "fair-share" fees that were deducted from employee paychecks for the benefit of the unions. The district court[1] granted summary judgment in favor of the unions, and we affirm.

I.

Minnesota law permits public employees to bargain collectively with the State by designating a labor union to serve as the exclusive representative for employees in their bargaining unit. Minn. Stat. § 179A.06, subdiv. 2. Employees may decline to join the union. *Id.* If an employee chooses not to join, however, state law permits the union to require the employee to contribute a "fair-share" fee equal to the cost of membership dues, less the cost of benefits available only to members. *Id.*, subdiv. 3. The statute caps these fees at eighty-five percent of what the union charges for regular membership dues. *Id.* To collect fees from a non-member employee, the union must send a written notice to the employee's public employer, at which point the employer is required to "deduct the fee from the earnings of the employee and transmit the fee" to the union after thirty days. *Id.*

In *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), the Supreme Court upheld a similar regime that allowed public-sector unions to compel the payment of fees from state employees who chose not to join the unions. The Court concluded that the unions could extract fair-share fees from non-members so long as

---

[1]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

the fees were used to fund projects "germane to [the unions'] duties as collective-bargaining representative," rather than ideological or political causes. *Id.* at 235-36. Forty-one years later in *Janus*, the Supreme Court overruled *Abood*. 138 S. Ct. at 2460. The Court held that public-sector unions violated the First Amendment by deducting fair-share fees from non-member employees without first obtaining affirmative consent from the employees. *Id.* at 2486.

The employees in this case sued the public-sector unions that represented their bargaining units under 42 U.S.C. § 1983, alleging violations of their rights under the First Amendment. After discovery, the district court granted summary judgment for the unions.

Paul Hanson and Linda Hoekman are public school teachers. Hanson declined to join the union that represented his bargaining unit. Hoekman originally joined her union but then quit around 2006. The unions deducted fair-share fees from their paychecks until the Supreme Court decided *Janus*. The teachers sued the unions, and asserted that they were entitled to a refund of these fees. The district court concluded that the unions' "good faith reliance on [the Minnesota statute] and forty years of Supreme Court precedent following *Abood*" provided a defense to liability under § 1983.

Mary Dee Buros is an education coordinator. Buros joined her union in 1997 and paid full membership dues. On September 11, 2017, she reauthorized her employer to remit dues to her union. The signed form provided that Buros's authorization would automatically renew from year to year, "irrespective of [her] membership in the union," unless Buros revoked consent during a seven-day period from September 24 to 30 of any given year. If she revoked consent during the seven-day window, then the revocation would become effective on October 1 of the same year. In August 2018, Buros resigned her membership. The union "processed immediately" Buros's resignation request, but continued to collect dues. Buros

submitted a revocation of her dues authorization during the revocation period on September 25, 2018. The revocation became effective on October 1, 2018, and the union stopped collecting dues as of that date.

Buros sued to recover what she calls the "compulsory portion" of the dues that she paid between 1997, when she first joined the union, and the Supreme Court's June 2018 ruling in *Janus*. This amount is equal to the fair-share fees that the union could have deducted before *Janus* if she had not joined the union. She also sought the full amount taken from her wages between her resignation from the union in August 2018 and the effective date of her revocation of consent on October 1, 2018.

The district court concluded that *Janus* did not support Buros's claim for the "compulsory portion" of her dues. The court reasoned that *Janus* concerned the rights of non-members of the union, and did not extend to those who opted to join a union. The court also decided that Buros was not entitled to a refund of the dues that she paid after resigning. The court explained that the union collected these dues pursuant to Buros's written authorization to collect dues through October 1, 2018, and that *Janus* did not invalidate the authorization.

Thomas Piekarski works in highway maintenance for the Minnesota Department of Transportation. Piekarski joined his union and served briefly as union president. By October 2017, he became disenchanted with the union, and asked to change his dues obligations to fair-share fees only. Union officials declined to act on the e-mail and informed Piekarski that he must submit a signed request. Piekarski also asserts that he hand-delivered a signed request, but the alleged recipient was not an employee of the union, and there is no evidence that the union ever received the alleged request.

In August 2018, Piekarski submitted a signed request to union officials asking to discontinue his dues payments. The request stated that it was "backdated to

-6-

10/3/17," the date when he first asked to switch to fair-share fees. The union processed the request, and stopped collecting dues from Piekarski's paycheck as of August 7, 2018. The following year, the union offered to allow Piekarski's proposed backdating, and sent him a check refunding all dues deducted between October 3, 2017, and August 7, 2018, plus interest. But Piekarski refused to cash the check.

Like Buros, Piekarski sued and sought an amount equal to the "compulsory portion" of any membership dues collected before the decision in *Janus*. He further sought an amount equal to the difference between membership dues and fair-share fees for the period between his initial request to resign in October 2017 and the decision in *Janus* in June 2018. Finally, he sought the full amount of any dues deducted after *Janus* was decided. The district court granted judgment for the union on Piekarski's claim arising before he attempted to resign, because *Janus* addressed only dues extracted from non-members of a union. The court determined that Piekarski's remaining claims were moot, because the union mailed Piekarski a check for the amount that he requested.

On appeal, the employees argue that the district court erred by granting summary judgment in favor of the unions on each of the claims for retrospective relief. We review the district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the employees. *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The employees also challenge the court's decision to award certain litigation costs to the unions, and we review that determination for abuse of discretion. *Thompson v. Wal-Mart Stores, Inc.*, 472 F.3d 515, 516 (8th Cir. 2006).

We consider first the claims made by Hanson and Hoekman. In *Brown v. American Federation of State, County & Municipal Employees*, No. 21-1640 (8th Cir. July 25, 2022), also decided today, we join other circuits in holding that public-sector unions are entitled to a good-faith defense to liability under § 1983 if they relied on a then-valid statute to collect fair-share fees from a non-member employee before *Janus* was decided. *Id*. at 5-8. Here, as in *Brown*, the unions relied on *Abood* and Minn. Stat. § 179A.06 to collect fair-share fees from Hanson and Hoekman. After the Supreme Court's decision in *Janus*, the unions stopped deducting fees.

Hanson and Hoekman argue that the good-faith defense is not available here for two reasons. First, they characterize the relief they seek as restitution, and maintain that good faith cannot shield the unions from claims for equitable relief. As the Supreme Court has explained, however, restitution traditionally involves "enforcement of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff [can] clearly be traced to particular funds or property in the defendant's possession." *Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 143 (2016) (internal quotation omitted). In contrast, the claims by Hanson and Hoekman are "against the general assets of the union, held in its treasury, and can only be characterized as legal." *Mooney v. Ill. Educ. Ass'n*, 942 F.3d 368, 371 (7th Cir. 2019). Even if the good-faith defense would not apply to claims for restitution, the claims at issue here are not in that category.

Second, Hanson and Hoekman assert that a good-faith defense requires the unions to show that they complied with *Abood*'s restrictions on the use of fair-share fees. *See* 431 U.S. at 235-36. But Hanson and Hoekman did not plead a violation of the *Abood* rule. They claimed that the collection of fair-share fees violated their rights under *Janus*, not that the union spent those fees on activities that were not

germane to collective bargaining. Hanson and Hoekman cannot now "embed an *Abood* claim in a *Janus* claim and thereby shift the burdens of pleading, proof, and persuasion." *Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 392 (6th Cir. 2020) (internal quotation omitted).

The unions' reliance on § 179A.06 was objectively reasonable. It is an open question whether subjective intent is relevant to the defense, but the employees did not present a submissible case that the unions collected fair-share fees in subjective bad faith in any event. Therefore, the district court correctly granted summary judgment for the unions on these claims.

III.

Piekarski and Buros raise different claims. In Piekarski's case, there is a threshold question of mootness. The district court concluded that claims arising after Piekarski's attempted resignation from the union are moot, because the union sent him a check for the total amount of post-resignation dues paid, plus interest. Piekarski contends that because he refused to accept the union's check, his claims are not moot.

The most analogous guidance from the Supreme Court concerns a plaintiff's rejection of a settlement offer for the full amount of relief requested. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 165-66 (2016). The Court held that an offer of settlement did not render a case moot, because an offer, "once rejected, had no continuing efficacy," and left the parties adverse to each other. *Id.* at 163. The Court did not resolve whether a payment into a bank account of the plaintiff would eliminate a case or controversy by fully satisfying a claim, but reasoned that an unaccepted settlement offer leaves the plaintiff empty-handed. *Id.* at 166.

The union characterizes the check as an "actual payment" of the money that Piekarski seeks, but an uncashed check is not materially different from an unaccepted offer of settlement. Unless the check is cashed, it "conveys only a hope that the bank account will have the promised funds." *Bais Yaakov of Spring Valley v. ACT, Inc.*, 12 F.4th 81, 94-95 (1st Cir. 2021). At bottom, a settlement offeree and the recipient of an uncashed check have the same thing: "a promise, but no funds." *Id.* at 94. The parties do not dispute that Piekarski refuses to cash the union's check, so his "interest in the lawsuit remains just what it was before." *Campbell-Ewald*, 577 U.S. at 162 (internal quotation omitted). One might think that Piekarski has no right to litigate in federal court about whether he is entitled to relief that is already present for the taking, but that view was rejected in *Campbell-Ewald*. *See id*. at 182-84 (Roberts, C.J., dissenting). Therefore, Piekarski's claims are not moot.

IV.

We next address the merits of the claims brought by Buros and Piekarski. We conclude that the unions are entitled to judgment on these claims as well.

Section 1983 provides a cause of action against a defendant whose actions were taken "under color of" state law and deprived another of a federal right. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 931 (1982). The right to be free from compelled speech is secured by the First and Fourteenth Amendments. *Janus*, 138 S. Ct. at 2463. By their terms, these amendments prohibit only state action. *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019).

The unions are private actors, and their conduct may be deemed state action only if that conduct is "fairly attributable to the State." *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (internal quotation omitted). One necessary condition for establishing state action is that the alleged deprivation has "resulted from the exercise

of a right or privilege having its source in state authority." *Lugar*, 457 U.S. at 937-39.

The claims by Buros and Piekarski cannot clear this hurdle. Buros and Piekarski each joined their unions and paid membership dues. They do not dispute the State's authority in general to deduct dues according to a private agreement. Rather, the alleged harms are that the unions obliged them to pay the "compulsory portions" of their dues, and that the unions continued to collect full membership dues for some time after they attempted to resign, without first obtaining a valid waiver of First Amendment rights.

The source of the unions' right to collect these dues, however, is not state authority; it is the private agreement between the unions and the employees. The unions do not collect dues "pursuant to" any state statute. *See Am. Mfs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation omitted). While Buros and Piekarski emphasize that the State remits wages based on collective-bargaining agreements between the State and the unions, these agreements do not enable the unions to collect dues from any particular employee. Instead, whether a union can collect membership dues from a given employee turns on the "private judgments" of the employee and the union. *Blum v. Yaretsky*, 457 U.S. 991, 1008-09, 1008 n.19 (1982). The employee must agree to join the union, and must authorize his or her employer to remit dues to the union on his or her behalf. The State then honors these authorizations by transmitting dues to the union. But it is the terms of the employee's union membership, not any state action, that create the employee's obligation to pay and the union's right to collect.

Buros argues she is at least entitled to an amount equal to the dues that were deducted after she resigned her membership, but this claim suffers from an identical defect. Her union's claimed entitlement to those dues traces back to a private decision. Buros agreed that the union could continue to collect dues "irrespective of

[her] membership," and that the revocation of her payment authorization would not take effect until October 1, 2018. The State had no role in setting the terms of this arrangement.

Piekarski asserts that his union failed to process promptly his resignation request, and that the delay resulted in his paying full membership dues for a period after he asked to exit the dues-paying arrangement. The union's alleged failure to process his request likewise lacks a "source in state authority." *Lugar*, 457 U.S. at 939. Piekarski e-mailed his request to union officials, and the union officials responded by requiring a signed request under union policy. Whether or not the union officials were correct in declining to honor the e-mail request, the decision was made by the union officials alone, and does not constitute state action. That the State continued to deduct dues from Piekarski as long as he remained on the union rolls does not make the State responsible for the decision of union officials to reject Piekarski's resignation request. *Blum*, 457 U.S. at 1005.

The harm allegedly suffered by Buros and Piekarski is attributable to private decisions and policies, not to the exercise of any state-created right or privilege. Without the requisite state action, Buros and Piekarski cannot show that the unions violated their constitutional rights. We therefore affirm the grant of summary judgment for the unions on their claims (albeit on the merits with respect to Piekarski), and need not address possible alternative grounds in support of the judgment.

V.

Finally, the employees assert that the district court erred by awarding certain litigation costs to the unions. They maintain that the unions could have moved to dismiss the complaints at the outset of the case, so they should not be responsible for

costs associated with discovery and class-action certification. *See* Fed. R. Civ. P. 12(b)(6).

The unions prevailed on motions for summary judgment. The rules of civil procedure provide that costs "should be allowed to the prevailing party," unless the court or a federal statute or rule directs otherwise. Fed. R. Civ. P. 54(d). A prevailing party is presumptively entitled to recover costs, and the opposing party must overcome that presumption. *Thompson v. Kanabec County*, 958 F.3d 698, 709 (8th Cir. 2020). The employees point to no authority that requires a district court to reduce an award of costs because a defendant opted to forgo a motion to dismiss and to file a dispositive motion only after developing a factual record. A defendant may choose how best to defend a lawsuit, and if the case is resolved in favor of the defense on a motion for summary judgment, then the defendant is presumptively entitled to costs. We thus conclude that the court did not abuse its discretion by awarding costs to the unions.

\*     \*     \*

The judgments of the district court are affirmed.

_____

-13-