*Notice: This opinion is subject to correction before publication in the Pacific Reporter. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| STATE OF ALASKA; GOVERNOR MICHAEL J. DUNLEAVY, in an official capacity; ATTORNEY GENERAL TREG R. TAYLOR, in an official capacity; DEPARTMENT OF ADMINISTRATION and COMMISSIONER PAULA VRANA, in an official capacity, | ) ) ) ) ) ) ) ) ) | Supreme Court No. S-18172<br><br>Superior Court No. 3AN-19-09971 CI<br><br>O P I N I O N<br><br>No. 7657 – May 26, 2023 |
| Appellants, | ) ) | |
| v. | ) ) | |
| ALASKA STATE EMPLOYEES ASSOCIATION/AMERICAN FEDERATION OF STATE, COUNTY and MUNICIPAL EMPLOYEES LOCAL 52, AFL-CIO, | ) ) ) ) ) ) ) | |
| Appellee. | ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Gregory A. Miller, Judge.

Appearances: Jessica M. Alloway, Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellants. Molly C. Brown, Dillon & Findley, P.C., Anchorage, and Scott A. Kronland and Matthew J. Murray, Altshuler Berzon LLP, San Francisco, for Appellee.

Before: Winfree, Chief Justice, Maassen, Carney, and Henderson, Justices, and Eastaugh, Senior Justice.[*] [Borghesan, Justice, not participating.]

WINFREE, Chief Justice.

## I.    INTRODUCTION

Alaska State Employees Association (ASEA) is a public sector union representing thousands of State employees, including union members and nonmembers. Prior to 2019, and pursuant to a collective bargaining agreement with ASEA, the State deducted union members' dues from their paychecks and deducted from nonmembers' paychecks a mandatory "agency fee" — a percentage of full union dues to support bargaining efforts on behalf of all employees — and transmitted the funds to ASEA.

In June 2018 the United States Supreme Court held in *Janus v. American Federation of State, County, & Municipal Employees, Council 31* (*Janus*) that charging union agency fees to nonmember public employees violated their First Amendment rights by "compelling them to subsidize private speech on matters of substantial public concern."[1]    The State and ASEA modified their collective bargaining agreement to comply with *Janus*, and the State halted collecting agency fees from nonmembers.

In 2019, after a change in executive branch administrations following the November 2018 election, the State took the position that *Janus* also required the State to take steps to protect union member employees' First Amendment rights.  The State contended that *Janus* required it to obtain union members' clear and affirmative consent to union dues deductions, or else they too — like nonmember employees — might be compelled to fund objectionable speech on issues of substantial public concern.  The governor issued an administrative order directing the State to bypass ASEA and deal directly with individual union members to determine whether they wanted their dues deductions to continue and to immediately cease collecting dues upon request.  Some

---

\*    Sitting by assignment made under article IV, section 16 of the Alaska Constitution.

[1]    138 S. Ct. 2448, 2460 (2018).

union members expressed a desire to leave the union and requested to stop dues deductions; the State ceased collecting their union dues.

The State then sued ASEA, seeking declaratory judgment that *Janus* compelled the State's actions. ASEA responded and brought counterclaims and third-party claims, seeking to enjoin the State's actions and recover damages for breach of the collective bargaining agreement and violations of several statutes. The superior court ruled in favor of ASEA, entering declaratory judgment that the State's actions were wrongful, enjoining those actions, and awarding damages to ASEA.

The State appeals. We affirm the superior court's declaratory judgment in favor of ASEA because neither *Janus* nor the First Amendment required the State to alter the union member dues deduction practices set out in the collective bargaining agreement. And because the State's actions were not compelled by *Janus* or the First Amendment, we affirm the superior court's rulings that the State breached the collective bargaining agreement and violated relevant statutes. We further affirm the superior court's permanent injunction prohibiting the State from unilaterally implementing its wrongful actions.

## II. CONSTITUTIONAL BACKDROP – *ABOOD* AND *JANUS*

In the late 1970s the United States Supreme Court decided *Abood v. Detroit Board of Education*.[2] In that case the Court held that public sector unions' collective bargaining agreements could require nonmember employees to pay a portion of what union members paid as union dues to support the unions' collective-bargaining activities on behalf of all employees, so long as those fees were used for "collective-bargaining, contract administration, and grievance-adjustment purposes."[3] But the Court concluded that such arrangements were unconstitutional if the agency fees were

---

[2] 431 U.S. 209 (1977), *overruled by Janus*, 138 S. Ct. at 2460.

[3] *Id.* at 232.

used "to contribute to political candidates and to express political views unrelated to [a union's] duties as exclusive bargaining representative."[4]

In 2018 the Supreme Court overruled *Abood* in *Janus*, declaring that *Abood* was poorly reasoned and that its constitutional dividing line was unworkable in practice.[5] The Court noted that during collective bargaining activities unions sometimes engage in speech on "sensitive political topics" such as "climate change, the Confederacy, sexual orientation and gender identity, [and] evolution."[6] The Court said that such speech "occupies the highest rung of the hierarchy of First Amendment values," and "merits 'special protection.' "[7] The Court identified compelled speech as the threat necessitating special First Amendment protections,[8] stating that it raises First Amendment concerns similar to those about "a law commanding 'involuntary affirmation' of objected-to beliefs."[9] The Court reasoned that requiring nonmember employees to pay agency fees could result in unions using those fees to fund collective bargaining speech advancing opinions with which nonmember employees disagreed.[10] Stating that such "compelled subsidization of private speech seriously impinges on First

---

[4]    *Abood*, 431 U.S. at 234.

[5]    *Janus*, 138 S. Ct. at 2460.

[6]    *Id.* at 2476.

[7]    *Id.* (quoting *Snyder v. Phelps*, 562 U.S. 443, 452 (2011)).

[8]    *See id.* at 2464 ("When speech is compelled . . . individuals are coerced into betraying their convictions. Forcing free and independent individuals to endorse ideas they find objectionable is always demeaning . . . .").

[9]    *Id.* (quoting *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 633 (1943)).

[10]    *Id.* at 2463-65, 2467.

Amendment rights,"[11] the Court applied exacting scrutiny[12] to "public-sector agency-shop arrangements"[13] and held that charging mandatory agency fees to nonmembers "violate[s] the First Amendment" by "compelling them to subsidize private speech on matters of substantial public concern."[14] *Janus* thus made it unconstitutional to require mandatory union agency fees for nonmember employees.

## III. FACTS AND PROCEEDINGS

### A. Facts

#### 1. Background labor practices

The State has approximately 15,000 employees represented by 11 public sector unions. Roughly 8,000 employees belong to a bargaining unit exclusively represented by ASEA, the largest public sector union in Alaska.[15] Union membership is not a condition of employment, but about 7,000 employees represented by ASEA chose to become union members.

ASEA engages in collective bargaining with the State on topics like wages, benefits, employee discipline, and employment terms. Every three years the State and ASEA execute a new collective bargaining agreement (CBA) that must be approved by the legislature.[16] CBAs may be modified during their three-year life spans.

---

**11** *Id.* at 2464.

**12** *Id*. at 2464-65 (considering level of scrutiny to apply to compelled speech; declining to apply rational basis and strict scrutiny and holding that exacting scrutiny applies).

**13** *Id.* at 2477-78.

**14** *Id.* at 2460, 2478.

**15** *See* AS 23.40.100 (authorizing bargaining units to democratically elect union as exclusive representative in collective bargaining).

**16** AS 23.40.215 (explaining that monetary terms of CBAs are "subject to legislative funding").

The two CBAs relevant to this appeal were in effect from July 2016 to June 2019 and then from July 2019 to June 2022, respectively. Pursuant to statute, both CBAs required the State to deduct union dues from ASEA union members' paychecks, upon members' written authorizations provided by ASEA, and to transmit the money to ASEA.[17] And, also pursuant to statute, both CBAs required the State to "not in any manner, directly or indirectly, attempt to interfere between any bargaining unit member and [ASEA]."[18] The 2016–2019 CBA also required the State to deduct agency fees from nonmembers' paychecks and transmit the money to ASEA. ASEA and the State later modified that CBA to comply with *Janus* and eliminated the required agency fees deductions from nonmembers' paychecks. The 2019–2022 CBA did not contain a requirement for agency fees deductions from nonmembers' paychecks.

An employee who voluntarily chooses to join ASEA signs a written union membership agreement and a written dues deduction authorization form authored by ASEA. Since 2017 the dues deduction form has included a one-year commitment automatically renewing if the member does not revoke the dues deduction authorization

---

[17]    *See* AS 23.40.220 ("Upon written authorization of a public employee within a bargaining unit, the public employer shall deduct from the payroll of the public employee the monthly amount of dues, fees, and other employee benefits as certified by the [bargaining unit] and shall deliver it to the [bargaining unit].").

[18]    *See* AS 23.40.080 ("Public employees may self-organize and form, join, or assist [a union] to bargain collectively through representatives of their own choosing, and engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection."); AS 23.40.110(a)(1)-(5) (prohibiting public employer from interfering with public employee's rights under AS 23.40.080; dominating union or interfering with union's formation, existence or administration; discriminating with regard to employment to encourage or discourage union membership; discharging an employee for exercising rights under AS 23.24.070-.260; and failing to bargain in good faith with union).

during an annual ten-day period.[19]  In 2020 ASEA changed its procedures so that when a member submitted a resignation outside the revocation window, ASEA would hold the request until the resignation period and then ask the State to stop dues deductions.

ASEA's union dues authorization forms emphasized that employees do not have to pay union dues, and forms used since 2018 emphasized that joining the union is optional.  For example, the version revised in September 2019, reads:  "Yes, I choose to be a Union member . . . . I understand my membership supports the organization advocating for my interests . . . and paying union dues is not a condition of employment."

### 2. The State's interpretation and application of *Janus*

Soon after the Supreme Court's 2018 *Janus* decision, then-Attorney General Jahna Lindemuth (under Governor Bill Walker's administration) issued a memorandum to executive branch employees explaining that while *Janus* invalidated charging mandatory agency fees to nonmember employees, it had no effect on other aspects of Alaska labor law and did not allow the State to disregard existing union membership dues authorizations.  But in August 2019, then-Attorney General Kevin G. Clarkson (under Governor Michael J. Dunleavy's administration) issued a legal opinion to Governor Dunleavy asserting that *Janus*'s holding necessitated much more than eliminating agency fees and instead "require[d] a significant change to the State's current practice in order to protect state employees' First Amendment rights."

---

[19]  The form version used when this controversy arose read:  "This voluntary authorization and assignment shall be irrevocable, regardless of whether I am or remain a member of ASEA, for a period of one year from the date of execution or until the termination date of the collective bargaining agreement . . . whichever occurs sooner, and for year to year thereafter unless I give [the State] and [ASEA] written notice of revocation not less than ten (10) days and not more than twenty (20) days before the end of any yearly period."

Attorney General Clarkson wrote that, after *Janus*, "a public employer such as the State cannot deduct from an employee's wages 'any . . . payment to the union' unless it has 'clear and compelling evidence' that an employee has 'freely given' his or her consent to subsidize the union's speech." He asserted that before the State could constitutionally deduct union dues from public employees' paychecks, those employees needed to knowingly, intelligently, and voluntarily waive their First Amendment rights. He contended that, because unions design payroll deduction authorization forms and control the environment in which employees are asked to authorize payroll deductions, the State would have "no way to ensure that its employees are being told exactly what their First Amendment rights are before being asked to waive them." He expressed concern that employees were being coerced to sign authorization forms when the process was "essentially a black box the State cannot peer inside of." He concluded that the only way to ensure that employees had knowingly, intelligently, and voluntarily waived their First Amendment rights when agreeing to join a union and pay dues would be for those employees to "provide that consent directly to the State" using State-authored dues authorization forms submitted through a State-created and managed online portal.

Attorney General Clarkson also asserted that *Janus* required the State to do even more to protect public employees' First Amendment rights. Drawing upon criminal law, he noted courts have held that waivers of *Miranda* rights can grow stale with the passage of time, "requiring the government to re-advise suspects of their rights."[20] Applying this logic to union dues payroll deduction authorizations, he

---

[20]     In *Miranda v. Arizona* the Supreme Court held that, under the Fourth Amendment, testimonial statements made during a custodial interrogation are not admissible in evidence unless the government adequately informed the interrogee of certain rights. 384 U.S. 436, 476 (1966). The Court's holding was designed to address the inherently coercive "pressures which work to undermine the individual's will to resist" divulging information in the context of a custodial interrogation. *Id*. at 467.

concluded that union members must have regular opportunities to agree or disagree with continued payroll deductions lest their initial waivers of First Amendment rights grow stale.

The parties in this case later stipulated that when Attorney General Clarkson wrote his opinion he was aware that other state attorney generals had interpreted *Janus* differently and that other courts had issued decisions contrary to the opinion. The parties also stipulated that Attorney General Clarkson did not consult with ASEA or offer it the opportunity to provide its views before releasing his opinion, but that State officials had consulted with certain Outside policy think tanks when the opinion was crafted.

On the same day Attorney General Clarkson gave his legal opinion to Governor Dunleavy, then-Department of Administration Commissioner Kelly Tshibaka emailed all State employees, including ASEA members, with links to the *Janus* decision, Attorney General Clarkson's legal opinion, and a Frequently Asked Questions (FAQ) document. Commissioner Tshibaka advised State employees that Attorney General Clarkson had concluded the State currently was not in compliance with *Janus*. The FAQ document informed employees that the State soon would be requiring union members to submit new dues consent forms before the State would deduct union dues from their paychecks. The parties in this case later stipulated that the State did not consult with ASEA or give ASEA advance notice before Commissioner Tshibaka sent the email. ASEA subsequently objected to these intended actions.

The next month the State sued ASEA, seeking declaratory judgment that the intended actions were lawful and mandated by *Janus*.[21] The day after ASEA

---

[21] *See Lowell v. Hayes*, 117 P.3d 745, 755 (Alaska 2005) (explaining that "declaratory judgments are rendered to clarify and settle legal relations, and to 'terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding' " (quoting *Jefferson v. Asplund*, 458 P.2d 995, 997-98 (Alaska 1969))).

responded with its court filings, Governor Dunleavy issued Administrative Order 312 and a timeline for steps the State would take to comply with its new view of *Janus*. The Order required the State to develop a new union dues authorization form telling employees that by signing the document they were waiving their "First Amendment right not to pay union dues and fees," were "freely associating" themselves with the union's speech, and could "revoke [their] consent to future union dues or fees withdrawal at any time and for any reason." The Order also instructed State officials to develop an online portal for employees to submit the updated form directly to the State. The Order also stated: "Once the new procedures and forms are implemented . . . all dues and fees deductions made under prior procedures will be immediately discontinued, pre-existing employee authorizations will be deemed void, and any new dues deductions" must follow the new process. And the Order stated that union members could opt out of union dues payroll deductions "any time after this Order is implemented" by submitting an "opt-out form."

Governor Dunleavy's office published a press release about his Order and he held a press conference to discuss it the same day. Commissioner Tshibaka sent a copy of the press release to all State employees in an email. The parties in this case later stipulated that the State did not notify ASEA of the Order before releasing it, but that the State had consulted with the same Outside policy think tanks it had consulted prior to releasing Attorney General Clarkson's legal opinion.

The State created a "Cease Union Dues Deduction" form and emailed it to twelve ASEA members who had contacted the State in response to Commissioner Tshibaka's emails. Some of them, union members who had paid dues to ASEA through payroll deductions and had signed dues authorization forms that included the one-year commitment and the ten-day revocation period, requested that the State stop deducting union dues from their paychecks. The State stopped collecting their dues and did not inform ASEA of its direct contact with the members or the cessation of dues deductions until after it stopped collecting the dues. The parties in this case later stipulated that, as

a result of the State's actions, ASEA suffered about $186,000 in damages comprising staff time diverted to responding to the State's emails and the Order, lost dues, and lost memberships.

## B. Proceedings

ASEA responded to the State's lawsuit by opposing the requested relief and filing a third-party complaint against Governor Dunleavy, Attorney General Clarkson, and Commissioner Tshibaka (collectively the State).[22] ASEA alleged that the State had violated the CBA, resulting in a breach of contract; violated various provisions of Alaska's Public Employment Relations Act (PERA);[23] violated the separation of powers inherent in the Alaska Constitution (by infringing on legislative functions); and violated Alaska's Administrative Procedure Act (APA) by implementing regulatory procedures without a lawful rulemaking process.[24] Because the State already had begun unilaterally implementing elements of its new labor relations scheme, ASEA requested a temporary restraining order enjoining the State from taking any action to implement Attorney General Clarkson's legal opinion and Governor Dunleavy's Order.

Resolving ASEA's request for a temporary restraining order, the superior court ruled that "*Janus* does not support the State's position" and that the State "provide[d] no colorable explanation for why the existing dues authorization form's annual opt-out period is not sufficient." The court noted that "[m]ost contracts are not revocable at will" and saw no reason to treat a union member's agreement to pay annual dues any differently from other contracts, including employer-sponsored health

---

[22] Under Alaska Appellate Rule 517(b), when public officials who have been sued in their official capacity leave office, their successors are automatically substituted as parties to an appeal. This is reflected in the caption for this appeal.

[23] AS 23.40.070-.260.

[24] AS 44.62.010-.950.

insurance plans with defined opt-in and opt-out periods. The court granted a temporary restraining order directing the State to stop implementing Attorney General Clarkson's legal opinion and Governor Dunleavy's Order, and the next month the court converted it to a preliminary injunction pending resolution of the lawsuit. When later resolving the merits of the parties' competing claims based on the parties' extensive stipulation of facts, the court denied the State's request for declaratory judgment, permanently enjoined the State from implementing Attorney General Clarkson's legal opinion and Governor Dunleavy's Order, and awarded ASEA about $186,000 in damages.

The State appeals.

## IV. STANDARD OF REVIEW

We review a grant of summary judgment de novo, viewing the facts in the light most favorable to the non-moving party,[25] and we may affirm on any basis appearing in the record.[26] We use our independent judgment when reviewing constitutional questions[27] and interpreting statutes.[28]

## V. DISCUSSION

### A. We Decline To Apply Issue Preclusion, And We Consider The Merits Of The State's Appeal.

ASEA invites us to hold that the State's argument about *Janus*'s reach is precluded by two federal court decisions, *Creed v. ASEA* and *Woods v. ASEA*, in which the Ninth Circuit Court of Appeals affirmed the District Court of Alaska's decisions

---

[25]    *Peterson v. State, Dep't of Nat. Res.*, 236 P.3d 355, 361 (Alaska 2010).

[26]    *Parson v. State, Dep't of Revenue, Alaska Hous. Fin. Corp.*, 189 P.3d 1032, 1036 (Alaska 2008).

[27]    *Forrer v. State*, 471 P.3d 569, 583 (Alaska 2020).

[28]    *Jerrel v. State, Dep't of Nat. Res.*, 999 P.2d 138, 141 (Alaska 2000).

that *Janus* does not extend a First Amendment right to avoid paying union dues.[29] Although ASEA's preclusion argument is not necessarily without merit, we decline to apply preclusion because of the State's third-party-defendant status and relatively limited participation in the federal cases.[30] The superior court evaluated the merits of the State's arguments, and we will do so as well.

## B. *Janus* Did Not Compel The State's Unilateral Changes To Alaska's Labor Relations System.

The State seeks to give *Janus* broad effect, arguing that it "placed prohibitions on public employers generally, and they apply to [union] members and nonmembers alike." According to the State, *Janus* prohibits it from collecting union dues from its member-employees unless it has clear and compelling evidence that the union members waived their First Amendment rights. But the State's interpretation of *Janus* has three major flaws.

First, *Janus* expressly dealt only with charging union agency fees to nonmember public employees.[31] The labor practice challenged and ultimately

---

[29] *Creed v. Alaska State Emps. Ass'n/AFSCME Loc. 52*, 472 F. Supp. 3d 518, 530-31 (D. Alaska 2020), *aff'd*, No. 20-35743, 2021 WL 3674742 (9th Cir. Aug. 16, 2021), *cert. denied*, 142 S. Ct. 1110 (2022) (mem.); *Woods v. Alaska State Emps. Ass'n/AFSCME Loc. 52*, 496 F. Supp. 3d 1365, 1374-75 (D. Alaska 2020) (quoting *Belgau v. Inslee*, 975 F.3d 940, 951 (9th Cir. 2020)).

[30] *See McAlpine v. Pacarro*, 262 P.3d 622, 627 (Alaska 2011) (listing four elements of collateral estoppel and noting that "existence of those elements provides only the underlying basis for the trial court's exercise of discretion to apply or not apply collateral estoppel, and that 'this discretion must be tempered by principles of fairness in light of the circumstances of each particular case' " (quoting *Misyura v. Misyura*, 242 P.3d 1037, 1040 (Alaska 2010))). Issue preclusion may not be appropriate if the parties were not previously afforded an opportunity to "fully and fairly" litigate the issue. *Id.*; *Edna K. v. Jeb S.*, 467 P.3d 1046, 1051 (Alaska 2020).

[31] *See Janus*, 138 S. Ct. 2448, 2460, 2478 (2018) (holding that agency-shop arrangements "violate[] the free speech rights of nonmembers by compelling them to

prohibited by *Janus* was that of charging compulsory agency fees to nonmember public employees, *as a condition of employment*, to support union collective bargaining activities.[32] *Janus* did not address how union dues are collected from public employees who *voluntarily* join public sector unions and agree to pay union dues. In fact, in *Janus* the Supreme Court said: "States can keep their labor-relations systems exactly as they are — only they cannot force nonmembers to subsidize public-sector unions."[33] The State thus misunderstands when and to whom the *Janus* waiver requirement applies.

Second, the State's reading of *Janus* imagines compulsion when none exists. The State is correct that, under *Janus*, *nonmember* "state employees cannot be compelled to subsidize the speech of a union with which they disagree." But by the time the State began unilaterally changing union member dues deduction procedures, the compulsion that concerned the Supreme Court in *Janus*, charging union agency fees to nonmember public employees, already had been eliminated from the CBA. After the elimination of agency fees, no public employee had to choose between a job or unwillingly subsidizing union speech. We agree with the Fourth Circuit Court of Appeals that when "the employee has a choice of union membership and the employee chooses to join, the union membership money is not coerced."[34]

Third, the State conflates waiving First Amendment rights with exercising them. Waiver is the "intentional relinquishment or abandonment of a known right."[35]

---

subsidize private speech on matters of substantial public concern" and that "public-sector agency-shop arrangements violate the First Amendment").

[32]    *Id.* at 2460.

[33]    *Id*. at 2485 n.27.

[34]    *Kidwell v. Transp. Commc'ns Int'l Union*, 946 F.2d 283, 292-93 (4th Cir. 1991).

[35]    *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

It may be that a public employee waives First Amendment free speech rights by voluntarily joining a union and agreeing to pay dues; but, if so, that action itself is clear and compelling evidence that the employee has waived those rights.[36] Yet a public employee also exercises a First Amendment right of free association by voluntarily choosing to become a dues-paying union member.[37] The State's assertion that it needs additional clear and compelling evidence of waiver before it can lawfully deduct union dues from union employees' paychecks pretends to value one First Amendment right while actually impinging upon another.

The State's interpretation of *Janus* is incorrect. We join courts across the country that have rejected similar arguments[38] and hold that *Janus* did not compel the State's actions set in motion by Attorney General Clarkson and Governor Dunleavy. *Janus* addressed the threat of compelled speech, and the Supreme Court held that requiring nonunion public employees to pay agency fees as a condition of employment violated the First Amendment because those employees could be forced to fund union

---

[36] *See Ramon Baro v. Lake Cnty. Fed'n of Tchrs. Loc. 504*, 57 F.4th 582, 586 (7th Cir. 2023) ("The voluntary signing of a union membership contract *is* clear and compelling evidence that an employee has waived her right not to join a union." (emphasis in original)).

[37] *AFSCME v. Woodward*, 406 F.2d 137, 139 (8th Cir. 1969) ("Union membership is protected by the right of association under the First and Fourteenth Amendments.").

[38] *See, e.g.*, *Ramon Baro*, 57 F.4th at 586; *Belgau v. Inslee*, 975 F.3d 940, 950 (9th Cir. 2020); *Bennett v. Council 31 of the Am. Fed'n of State, Cnty. & Mun. Emps.*, 991 F.3d 724, 731 (7th Cir. 2021), *cert. denied*, 142 S. Ct. 424 (mem.); *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 961 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 423 (mem.); *Fischer v. Governor of New Jersey*, 842 F. App'x 741, 752-53, 753 n.18 (3d Cir. 2021), *cert. denied*, 142 S. Ct. 426 (mem.); *Hoekman v. Educ. Minn.*, 41 F.4th 969, 976 (8th Cir. 2022), *reh'g & reh'g en banc denied*, 2022 WL 3754006; *Allen v. Ohio Civil Serv. Emps. Ass'n AFSCME, Local 11*, No. 2:19-cv-3709, 2020 WL 1322051, at *12 (S.D. Ohio Mar. 20, 2020).

speech repugnant to their own opinions and beliefs to keep their jobs.[39]   But by November 2018 the State and ASEA had addressed that threat of compelled speech by eliminating mandatory agency fees from the CBA and ceasing charging agency fees to nonunion employees.  Complying with *Janus* required nothing further.

C.    **Broader First Amendment Principles Do Not Justify The State's Unilateral Actions.**

The State argues that even if *Janus*'s holding is not as far-reaching as the State contends, "[t]he First Amendment controls" and necessitated the State's actions. The State is mistaken.

The First Amendment "constrains governmental actors and protects private actors."[40]   Unless the United States government or a state government[41] unreasonably curtails a private actor's right to speak or associate, no First Amendment violation occurs.[42]  This is known as the "state action" requirement.[43]  The question at the heart of the state action inquiry is whether the government is responsible for an

---

[39]    *Janus*, 138 S. Ct. 2448, 2464, 2478 (2018).

[40]    *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1926 (2019).

[41]    The Fourteenth Amendment makes First Amendment protections applicable against the States.  U.S. Const. amend. XIV, § 1 ("No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law . . . .").

[42]    *See Manhattan Cmty. Access Corp.*, 139 S. Ct. at 1928 ("The text and original meaning of [the First and Fourteenth Amendments], as well as this Court's longstanding precedents, establish that the Free Speech Clause prohibits only *governmental* abridgment of speech.  The Free Speech Clause does not prohibit *private* abridgment of speech." (emphasis in original)).

[43]    *See, e.g.*, *id.* at 1926; *Belgau v. Inslee*, 975 F.3d 940, 946 (9th Cir. 2020).

alleged constitutional deprivation.[44] That "deprivation must be caused by the exercise of some right or privilege created by the State."[45] The government's "[m]ere approval of or acquiescence" to a private party's decision is not enough to hold the government responsible.[46] To determine whether state action has occurred, courts consider whether the government played a significant or coercive role in the activity[47] and whether there is a "symbiotic relationship" of mutual benefit between the government and the private party.[48]

The State argues that it engaged in state action when "compelling subsidies to unions" by deducting dues from members' paychecks. This framing of state action is unpersuasive. The State's acquiescent role facilitating interaction and agreements between two private parties, the union member employee and the union, does not amount to state action. The dues deduction is authorized by a private agreement; it is not a right or privilege created by the State even though a statute requires the State to honor that private agreement.[49] And the State plays no significant

---

[44]     *Ohno v. Yasuma*, 723 F.3d 984, 994 (9th Cir. 2013); *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

[45]     *Lugar*, 457 U.S. at 937.

[46]     *See Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).

[47]     *See Belgau*, 975 F.3d at 947.

[48]     *Id.* at 948 (quoting *Sawyer v. Johansen*, 103 F.3d 140, 140 (9th Cir. 1996)).

[49]     *See* AS 23.40.220 ("Upon written authorization of a public employee within a bargaining unit, the public employer shall deduct from the payroll of the public employee the monthly amount of dues, fees, and other employee benefits as certified by the [bargaining unit] and shall deliver it to the [bargaining unit].").

or coercive role in the relationship between the union and its members.[50] State employees freely choose whether to join a union; membership is not a condition of employment. Only those employees who join ASEA and sign forms authorizing the State to deduct their union dues from their paychecks will pay anything to ASEA. The State does not become responsible for its employees' decisions "by requiring completion of a form,"[51] or through the "additional paper shuffling"[52] it performs in its accountant-like role.[53] Rather the State permits the private choice of private actors.[54]

There also is no "symbiotic relationship" between the State and ASEA or a substantial degree of cooperation between them.[55] The State receives no benefit from transmitting collected union dues to ASEA. Rather than acting in concert, the State and

---

**50** *See Belgau*, 975 F.3d at 947; *cf.* AS 23.40.110(a)(1)-(5) (prohibiting public employer from interfering with public employee's rights under AS 23.40.080; dominating union or interfering with union's formation, existence or administration; discriminating with regard to employment to encourage or discourage union membership; discharging an employee for exercising rights under AS 23.40.070-.260; and failing to bargain in good faith with union).

**51** *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 55 (1999) (quoting *Blum*, 457 U.S. at 1007).

**52** *Id.* (internal quotation marks omitted).

**53** *See Belgau*, 975 F.3d at 948 (explaining that "ministerial processing of payroll deductions pursuant to [union agreement]" was not state action because "providing a 'machinery' for implementing the private agreement by performing an administrative task" does not establish state responsibility (quoting *Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 54)).

**54** *Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 55; *see also, e.g.*, *Hoekman v. Educ. Minn.*, 41 F.4th 969, 977 (8th Cir. 2022) ("The unions are private actors, and their conduct may be deemed state action only if that conduct is 'fairly attributable to the State.'" (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982))).

**55** *Belgau*, 975 F.3d at 948 (quoting *Sawyer v. Johansen*, 103 F.3d 140, 140 (9th Cir. 1996)).

ASEA oppose one another at the collective bargaining table every few years, and as this case demonstrates, they also oppose each other in court. Put simply, there is no state action giving rise to a First Amendment violation when a public employee joins a union and directs the State to collect the employee's union dues from paychecks and transmit them to the union.[56] The constitutional deprivation that the State claims it is seeking to prevent is illusory.

The State also contends that the CBA's provisions for collecting union dues from state employees are unenforceable because they violate the First Amendment. We disagree. The CBA's method for collecting union dues does not involve state action, and "[t]he First Amendment does not" give the State the right to "renege on [its] promise" to collect dues on behalf of public employees who opt to join the union.[57] The State and ASEA voluntarily entered into the CBA's contractual relationship. "When 'legal obligations . . . are self-imposed,' state law, not the First Amendment, normally governs."[58] The First Amendment does not "provide a right to 'disregard promises that would otherwise be enforced under state law.' "[59] The CBA

---

[56]   *Hoekman*, 41 F.4th at 978 ("[I]t is the terms of the employee's union membership, not any state action, that create the employee's obligation to pay and the union's right to collect.").

[57]   *Belgau*, 975 F.3d at 950.

[58]   *Id.* (quoting *Cohen v. Cowles Media Co.*, 501 U.S. 663, 671 (1991) (omission in original)); *see also Ramon Baro v. Lake Cnty. Fed'n of Tchrs. Loc. 504*, 57 F.4th 582, 586-87 (7th Cir. 2023); *Bennett v. Council 31 of the Am. Fed'n of State, Cnty. & Mun. Emps.*, 991 F.3d 724, 731 (7th Cir. 2021), *cert. denied*, 142 S. Ct. 424 (2021) (mem.).

[59]   *Belgau*, 975 F.3d at 950 (quoting *Cohen*, 501 U.S. at 671). As the Seventh Circuit aptly put it: "[T]he First Amendment protects our right to speak. It does not create an independent right to void obligations when we are unhappy with what we have said." *Ramon Baro*, 57 F.4th at 587.

and union members' dues collection authorizations do not violate the First Amendment, and the State is bound to its bargained-for promises in the CBA.

**D.     Because *Janus* Did Not Necessitate The State's Unilateral Actions, The State Violated The CBA.**

The State conceded at oral argument before us that if we disagree with its interpretation of *Janus*, we should affirm the superior court's ruling that the State breached the CBA because the State has no justification for its unilateral actions contrary to the CBA other than its reading of *Janus*. Because we hold that *Janus* did not require the State to take the actions it did, we affirm the superior court's ruling that the State breached Sections 3.01[60] and 3.04[61] of the CBA and the implied covenant of good faith and fair dealing.[62] We accordingly affirm the award of compensatory damages to ASEA.

**E.     Because *Janus* Did Not Mandate The State's Unilateral Actions, The State Violated PERA.**

PERA aims "to promote harmonious and cooperative relations between government and its employees."[63] In line with this goal, the Act protects public

---

[60]     Section 3.01 of the CBA prohibited the State from interfering between ASEA and its members "in any manner."

[61]     Section 3.04 of the CBA required the State to deduct dues from member's wages and forward those dues to ASEA.

[62]     The covenant of good faith and fair dealing is implied in all contracts in Alaska. *Lockwood v. Geico Gen. Ins. Co.*, 323 P.3d 691, 697 (Alaska 2014); *see also Jones v. Jones*, 505 P.3d 224, 233 n.31 (Alaska 2022) ("The covenant, which is included in every contract, concerns parties' duty not to act in a way 'which will injure the right of the other to receive the benefits of the agreement,' . . . and is intended to require the parties 'to do everything that the contract presupposes will be done in order to accomplish the purpose of the contract . . . .' "(first quoting *Guin v. Ha*, 591 P.2d 1281, 1291 (Alaska 1979); then quoting *Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 562 (9th Cir. 2016)).

[63]     AS 23.40.070.

employees' rights to collectively bargain, imposes requirements on how the State interacts with organized labor, and prohibits the State from engaging in a number of unfair labor practices.[64] The superior court granted summary judgment in favor of ASEA on its claim that the State violated PERA, but did not specify which PERA provisions the State violated.[65] We therefore affirm the superior court's ruling as it applies to three particular sections of PERA, as explained below.

When the State stopped collecting dues on behalf of some union members, it ran afoul of AS 23.40.220, which states that "[u]pon written authorization of a public employee within a bargaining unit, the public employer shall deduct from the payroll of the public employee the monthly amount of dues . . . and shall deliver it to the . . . exclusive bargaining representative." No elaboration is necessary to see how the State deviated from the statute's command. *Janus* did not call for the State to cease honoring union members' dues authorization forms, to tell union members they could stop dues deductions at any time, or to stop forwarding union members' dues to ASEA. The State had no justification for reneging on this statutory duty. We hold, based on the parties' stipulated facts, that the State violated AS 23.40.220.

ASEA argues that the State interfered with its operations in violation of AS 23.40.110(a)(2), which provides that a public employer "may not . . . dominate or interfere with the formation, existence, or administration of" a union organization. The State counters that an anti-union animus is required to violate AS 23.40.110(a)(2) and

---

[64] AS 23.40.080 (providing that public employees may organize to bargain collectively); AS 23.40.110 (prohibiting public employer from interfering with organization under AS 23.40.080).

[65] The temporary restraining order cites various PERA provisions but does not make clear which claims ASEA was most likely to prevail upon. The preliminary injunction similarly does not specify which sections of PERA the State may have violated.

there is no such evidence in the record. But neither the statute nor our previous holdings contain anything resembling an intent or scienter requirement for subsection .110(a)(2),[66] and it is difficult to imagine how a public employer could attempt to dominate a union or interfere with the formation, existence or administration of a union without having an anti-union animus. Moreover, as discussed below, there is evidence in the record of the State's anti-union animus underlying its unilateral changes to the labor relations framework. The State, a public employer, interfered with the administration of ASEA, a union organization, when it unilaterally told ASEA members they could stop deducting dues, and actually ceased collecting dues from some members, in violation of the members' dues authorization agreements with ASEA and the State's collective bargaining agreement with ASEA. We conclude, based on the parties' stipulated facts, that the State violated AS 23.40.110(a)(2).

Alaska Statute 23.40.110(a)(3) prohibits a public employer from "discriminat[ing] in regard to hire or tenure of employment or a term or condition of employment to encourage or discourage membership in an organization." According to the National Labor Relations Board, under Section 8(a) of the National Labor Relations Act (NLRA), the federal analog to PERA, when "an employer ceases to deduct and remit dues in derogation of an existing contract, it is in effect unilaterally changing the terms and conditions of employment of its employees."[67] The superior

---

[66] The State argues that we previously held that any violation of AS 23.40.110(a) requires an anti-union motive, citing *Univ. of Alaska v. Alaska Cmty. Colls.' Fed'n of Tchrs., Loc. 2404*, 64 P.3d 823, 826 n.9 (Alaska 2003). But the relevant footnote merely summarized another case, *Alaska Cmty. Colls.' Fed'n of Tchrs., Loc. No. 2404 v. Univ. of Alaska,* 669 P.2d 1299 (Alaska 1983), when we held only that an anti-union motive was required under AS 23.40.110(a)(1) and (3); that case did not discuss subsection .110(a)(2). *Id.* at 1307-08.

[67] *Shen-Mar Food Prods., Inc.*, 221 N.L.R.B. 1329, 1329 (1976); *see also Am. Needle & Novelty Co.*, 206 N.L.R.B. 534, 544-45 (1973) (affirming administrative law judge's finding that company's failure to remit dues violated § 8(a)(5) of NLRA).

court found "merit" to ASEA's argument that "State control [of] the authorization forms for union dues seems likely to discourage union membership." The court described the language the State proposed for its new dues authorization forms warning employees that they were waiving their First Amendment rights as "not neutral" and capable of "directly violat[ing] PERA." The court stated: "[T]he State could describe union membership in a hostile way on authorization forms it drafts," and "[t]here is no guarantee . . . that the State's method and/or language would not discourage employees from joining unions." Based on this analysis, it appears that the court concluded, on the parties' stipulated facts, that the State acted with an anti-union motive and discriminated with regard to a term of employment in a manner discouraging union membership among state employees in violation of AS 23.40.110(a)(3).

The State nonetheless argues that there is no evidence in the record that it acted with an anti-union motive. But we see abundant evidence of anti-union animus: The State espoused its sweeping interpretation of *Janus* and began unilaterally changing dues deduction procedures only after a change in administration; the new administration consulted with Outside special interest groups but did not consult or negotiate with ASEA, with which it had a collective bargaining agreement; the State emailed all employees represented by ASEA to inform them (incorrectly) about their First Amendment rights and about union members' (fictitious) rights to immediately stop payroll dues deductions, again without first consulting ASEA; the State made changes only to union dues deduction procedures, not to other union-related employee payroll deductions; and the State actually stopped collecting dues from ASEA members outside their contractual revocation windows and did not inform ASEA.

There is evidence in the record, particularly in the parties' stipulated facts, supporting the superior court's conclusion that the State's actions were "not neutral" but rather were "hostile" to ASEA, and we therefore reject the State's argument to the contrary. We conclude that the State violated AS 23.40.110(a)(3) by interfering with

the statutory and contractual dues deduction process in a way that singled out and discouraged union membership.

**F.  We Decline To Address The Parties' Arguments About Constitutional Separation Of Powers And The Administrative Procedure Act.**

The superior court ruled in favor of ASEA on its claims that the State violated the constitutional separation of powers doctrine and the Alaska Administrative Procedure Act when it unilaterally made changes to the union dues authorization and collection process.  We decline to reach these issues because our other holdings provide an adequate basis for affirming all forms of relief granted to ASEA.

## VI.  CONCLUSION

We AFFIRM the superior court's rulings that neither the *Janus* decision nor the First Amendment required the State to unilaterally alter the union dues deduction practices in place under PERA and the CBA prior to August 27, 2019, to unilaterally take the steps set forth in Attorney General Clarkson's August 2019 legal opinion, and to unilaterally implement the steps set forth in Governor Dunleavy's Administrative Order 312.  We AFFIRM the superior court's rulings that the State breached the CBA and violated provisions of PERA, as well as the superior court's damages award.  And we AFFIRM the superior court's permanent injunction barring the State from implementing Attorney General Clarkson's legal opinion and Governor Dunleavy's Administrative Order or otherwise unilaterally changing the CBA's union dues deduction practices.